# Exhibit A

(Summons and Complaint in State Court Action)

FILED: NEW YORK COUNTY CLERK 07/21/2020 03:52 PM                INDEX NO. 653262/2020
NYSCEF DOC. NO. 1                                               RECEIVED NYSCEF: 07/21/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| ZILLOW, INC., | Index No.: |
| *Plaintiff*, | |
| -against- | **SUMMONS** |
| CAPITAL ONE BANK, N.A., | Date Index No. Purchased: |
| *Defendant*. | Plaintiff designates New York County as the place of trial |

**TO THE ABOVE NAMED DEFENDANT:**

Capital One Bank, N.A.
1600 Capital One Drive
McLean, Virginia 22102

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance, on the Plaintiff's attorney within 20 days after the service of this Summons, exclusive of the day of service (or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or Answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Plaintiff designates New York County as the place of trial.  The basis for venue is CPLR §§ 501 and 507.

Dated: New York, New York
July 21, 2020

**BROWN RUDNICK LLP**

/s/ *David J. Molton*
David J. Molton
Thomas J. Regan
D. Cameron Moxley
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: dmolton@brownrudnick.com
Email: tregan@brownrudnick.com
Email: cmoxley@brownrudnick.com

*Counsel for Plaintiff*

FILED: NEW YORK COUNTY CLERK 07/21/2020 03:52 PM                                INDEX NO. 653262/2020
NYSCEF DOC. NO. 1                                                                RECEIVED NYSCEF: 07/21/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| ZILLOW, INC., | Index No. _____ |
| *Plaintiff*, |  |
| -against- | **COMPLAINT** |
| CAPITAL ONE BANK, N.A., |  |
| *Defendant*. |  |

Plaintiff Zillow, Inc. ("Zillow," "Sublandlord," or "Plaintiff"), by its attorneys Brown Rudnick LLP, for its complaint against Capital One Bank, N.A. ("Capital One," "Subtenant," or "Defendant"), alleges as follows:

### NATURE OF ACTION

1. This is an action for specific performance, breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief as a result of Subtenant Capital One's unjustified breach and repudiation of the January 6, 2020 Sublease from Sublandlord Zillow of certain commercial real estate space located on Fifth Avenue, New York, New York (the "Sublease").

2. Under the Sublease, Capital One was to receive documentation that the prime landlord consented to the Sublease and that Capital One had subordination, recognition, and attornment rights, commonly referred to in the commercial sublease market as "NDA" rights in such form and substance as may be reasonably acceptable to the prime landlord and Capital One. Contemporaneously with negotiating and finalizing the Sublease itself, Capital One, the prime landlord, and Zillow, through their respective counsel, negotiated in detail the language of a letter ultimately signed by the main landlord and each of them.  This letter was specifically

negotiated between the parties and provided Capital One with documentation plainly reflecting that the main landlord consented to the Sublease and setting forth Capital One's additional rights in the form that Capital One agreed to accept. Capital One never raised that the document it jointly drafted did not sufficiently provide for its rights, nor did it ever propose a draft NDA document other than the letter that the prime landlord and each of them signed and negotiated contemporaneously with negotiating the Sublease.

3. Pursuant to the Sublease, Zillow had 60 days to deliver to Capital One documentation of its NDA rights in form and substance reasonably acceptable to the prime landlord and Capital One. In accordance with the Sublease, Zillow delivered the letter signed by all three parties (the main landlord, Capital One, and Zillow) on January 24, 2020, less than three weeks after the January 6, 2020 Sublease was entered.

4. Under the Sublease, if Zillow failed to deliver documentation of Capital One's NDA rights within 60 days of the Sublease, Capital One had the right to terminate the Sublease. When the 60 days expired on March 6, 2020, Capital One raised no issue with Zillow, or anyone else to Zillow's knowledge, about needing any additional documentation to fulfill the parties' obligations under the Sublease.

5. It was not until more than two months later, on May 13, 2020, over *four months* after the Sublease was fully executed by the parties, when suddenly—with its first rent payment due date of August 1, 2020 on the horizon—Capital One wrote to Zillow advising that it was purportedly terminating the Sublease because Capital One was never provided with sufficient documentation of its NDA rights.

6. The gamesmanship and blatant bad faith of Capital One's belated, dubious reading of the Sublease's requirements and of the substance of the letter it received—which

Capital One contemporaneously and jointly negotiated with Zillow—is obvious. Capital One simply no longer wants to honor the deal it previously agreed to with Zillow. It defies all common sense that, despite jointly negotiating the letter it received and that was signed by all parties, Capital One now asserts that it patiently waited nearly *four months*—in complete silence—without lifting a finger to type a quick email or to pick up the phone to inquire of Zillow as to the status of its recognition rights documentation that it now purports to have been waiting for and not received.

7. The truth is obvious: due to a drastic change in the economic status of the world since the execution of the Sublease, Capital One has, belatedly, decided it no longer wants to occupy the Fifth Avenue space it committed to sublet from Zillow and is now (badly and unconvincingly) attempting to manufacture an excuse, in the form of an allegation that Zillow somehow failed to provide documentation to Capital One under the Sublease (which it did not), to avoid its obligations under the Sublease. Instead, it is without dispute that Capital One timely received the landlord consent and rights documentation on January 24, 2020 that it *jointly negotiated with Zillow and the prime landlord*, in full satisfaction of Zillow's obligations, and any deficiency in the documentation was long ago waived by Capital One.

8. By this action Zillow seeks specific performance of Capital One's obligations under the Sublease, monetary damages for breach of contract and breach of the covenant of good faith and fair dealing, and/or declaratory judgment relief.

**PARTIES**

9. Plaintiff Zillow is a Washington corporation with its principal place of business at 1301 Second Avenue, 31st Floor, Seattle, Washington 98101.

10. Defendant Capital One is a national banking association with its principal place of business at 1600 Capital One Drive, McLean, Virginia 22102.

## JURISDICTION AND VENUE

11. Jurisdiction is appropriate in this Court pursuant to CPLR §§ 302(a)(1), 302(a)(2), and 302(a)(4).

12. Venue is appropriate in this Court pursuant to CPLR § 507, because the subleased Premises (as defined herein) are situated in this county and judgment in this action would affect the possession, use or enjoyment of real property in this county; and pursuant to CPLR § 501, because the Sublease fixes venue in the "county or district in which the Premises are located."

## STATEMENT OF FACTS

### The Master Lease

13. Zillow leases certain premises located at 130 Fifth Avenue, New York, New York, consisting of approximately 53,200 rentable square feet, including the entire 6th, 7th, 8th, and 9th floors of the building (the "Premises"). The Premises are leased from ROC-Fifth Avenue Associates, LLC ("Landlord") pursuant to a Lease dated February 21, 2014 (the "Original Lease"), as amended by a letter agreement, dated February 28, 2014, a First Amendment of Lease, dated June 11, 2014, a Second Amendment of Lease, dated September 23, 2014, and a Third Amendment of Lease, dated June 6, 2017 (as so amended and as redacted, the "Master Lease").

### The Sublease

14. Pursuant to the January 6, 2020 Sublease between Zillow and Capital One (the "Sublease"), Zillow subleased the Premises to Capital One. The Sublease is attached hereto as

4

Exhibit A, and the Sublease includes as its Exhibit 1 a partially redacted copy of the Master Lease.

15. Pursuant to Section 2(b) of the Sublease, absent earlier terminations pursuant to the terms of the Sublease, the Sublease's term runs until October 30, 2024.

16. Section 3 of the Sublease provides the following "<u>Base Rent</u>" (as defined in Section 3(a) of the Sublease) schedule for Capital One's rent payments:

| Months | Per RSF | Base Rent per Annum | Base Rent per Month |
|---|---|---|---|
| Commencement Date – 16th full calendar month | $79.00 | $4,202,800.00 | $350,233.33 |
| 17 – 28 | $80.78 | $4,297,363.00 | $358,113.58 |
| 29 – 40 | $82.59 | $4,394,053.67 | $366,171.14 |
| 41 – 52 | $84.45 | $4,492,919.88 | $374,409.99 |
| 53 – expiration of Sublease Term | $86.35 | $4,594,010.57 | $382,834.21 |

17. Capital One's first Base Rent payment to Zillow of $350,233.33 pursuant to the Sublease is due on August 1, 2020.

18. Pursuant to Section 3(b)'s Base Rent schedule, over the life of the Sublease term Capital One would pay Zillow a minimum of $21,981,147.10 in Base Rent, exclusive of any "Additional Rent" (as defined in Section 3(a) of the Sublease) that Capital One may owe at any given time over the life of the Sublease term.

19. Section 5(a)(ii) of the Sublease provides, in part: "Sublandlord [Zillow] shall use commercially reasonable, good faith efforts to obtain from Landlord a subordination, recognition and attornment agreement in such form and substance as may be reasonably acceptable to Landlord and Subtenant (an '<u>NDA</u>') as soon as reasonably possible following the execution and delivery of this Sublease." Section 5(a)(ii) further provides, in part: "If an NDA is not fully executed and delivered to Subtenant within sixty (60) days after the date on which this Sublease

5

is fully executed and delivered to Subtenant, Subtenant shall have the right to terminate this Sublease by giving notice of such termination to Sublandlord prior to Subtenant receiving such fully executed NDA. . . ."

20. Section 12 of the Sublease provides that the Sublease is "subject to the consent of Landlord, which consent shall be evidenced in such form and substance as may be reasonably acceptable to Landlord, Subtenant and Sublandlord (the '<u>Landlord's Consent</u>')." Under Section 12, Zillow shall "use commercially reasonable, good faith efforts to obtain the Landlord's Consent as soon as reasonably possible following the execution and delivery of this Sublease by Subtenant and Sublandlord." If Zillow did not deliver the Landlord's Consent to Capital One within 45 days after the Sublease was signed and delivered, then pursuant to Section 12 Capital One could terminate the Sublease.

21. Section 8 of the Sublease provides Zillow with the "same rights and remedies with respect to a breach of this Sublease by Subtenant as Landlord has with respect to a breach of the Lease, as such provisions are incorporated herein by Section 6" of the Sublease. Pursuant to Section 6, Article 23 of the Original Lease concerning "Remedies and Damages" is incorporated into the Sublease.

22. Section 23.1(C) of the Original Lease, incorporated by reference into the Sublease, provides: "In the event of a breach or threatened breach by Tenant . . . Landlord shall have the right to," among other things, "seek any declaratory, injunctive or other equitable relief, and specifically enforce this Lease," and such remedies are "cumulative and nonexclusive" and do not preclude any other equitable or legal remedies.

### Zillow Timely Provides the Landlord's Consent and Rights Documentation in the Form and Substance Jointly Negotiated by Capital One, Zillow, and Landlord

23. On January 24, 2020, Capital One received a fully executed copy of a jointly negotiated letter entered into by and among Zillow, Landlord (ROC-Fifth Avenue Associates, LLC), and Capital One (the "<u>Consent Letter</u>") in satisfaction of Section 5(a)(ii) (the NDA requirement) and Section 12 (the Landlord Consent requirement) of the Sublease. The Consent Letter is attached hereto as Exhibit B. As required under both Sections 5(a)(ii) and 12 of the Sublease, Zillow timely delivered the fully executed Consent Letter to Capital One just 18 days after the Sublease was entered into.

24. The parties concurrently negotiated and finalized the Sublease and the Consent Letter. In fact, Capital One's counsel provided Zillow with detailed line edits to the Consent Letter on December 6, 2019, one month *before* the January 6, 2020 Sublease itself was even signed.

25. Nothing in the Sublease prohibited the parties from combining both the Landlord Consent and the NDA into the single form of the Consent Letter. The concurrently negotiated Sublease is actually explicitly to the contrary: the NDA rights may be "*in such form and substance as may be reasonably acceptable to Landlord and Subtenant*" (Section 5(a)(ii)) (emphasis added), and the Landlord's Consent "*shall be evidenced in such form and substance as may be reasonably acceptable to Landlord, Subtenant and Sublandlord*" (Section 12) (emphasis added).

26. The Consent Letter in the form signed by the Landlord (and by Capital One and Zillow) incorporates Capital One's own edits following its and its counsel's review and negotiation of the language set forth therein.

7

27. Because it also satisfies the NDA requirement in Section 5(a)(ii) of the Sublease, the Consent Letter far exceeds the scope of a landlord consent. Paragraph 8 of the Consent Letter begins, "In the event that the Lease shall be terminated . . . ." Providing for the contingency of what happens if a master lease is terminated is beyond the requirements of a landlord's consent, and the parties included this language in the Consent Letter to provide, in a form acceptable to Capital One, the documentation of Capital One's rights.

28. Capital One also made explicit revisions to the language of Paragraph 8 of the Consent Letter which exceeded the scope of a landlord consent. Paragraph 8 provides, in pertinent part, "In the event that the Lease shall be terminated, Subtenant shall attorn to Owner pursuant to the then executory terms and conditions of the Sublease, except that Owner shall not . . . (3) be bound by any previous modification of the Sublease except to the extent such modification was consented to by Owner in writing. . . ." By the Consent Letter, the Landlord consented to the Sublease and, thus, pursuant to Paragraph 8, was bound to the Sublease and only had the ability "not" to "be bound" if the Sublease was modified without the Landlord's written consent. Notably, this was the revised language that Capital One and its counsel explicitly proposed in writing for Paragraph 8 in the negotiation of the Consent Letter.

29. Beyond just providing documentation of the Landlord's consent, the Consent Letter also provided at Paragraph 3 that the Sublease "shall be subject and subordinate at all times to the Lease, and to all of the provisions, covenants, agreements, terms and conditions of the Lease."

30. Following the full execution of the Sublease, the timing for obtaining the Landlord's Consent (45 days pursuant to the terms of Section 12 of the Sublease) and for obtaining the NDA (60 days pursuant to Section 5(a)(ii) of the Sublease) overlapped and was

nearly identical. *At no time* did Capital One provide a draft NDA document separate and apart from the Consent Letter. *At no time* did Capital One even suggest that it required or expected to receive rights documentation beyond what was set forth in the jointly negotiated Consent Letter. To the contrary, both Capital One and Zillow treated the Consent Letter (the negotiation of which dated back to before the Sublease was even effective) as encompassing the entirety of the documentation required under the Sublease, in full satisfaction of the parties' obligations thereunder.

**Capital One Purports to Terminate the Sublease**

31. By letter to Zillow Group, Inc. dated May 13, 2020, Kyle Hamblin, a Capital One Vice President, stated that Capital One "hereby terminates the Sublease effective immediately" because an "NDA (as defined in the Sublease) was not fully executed and delivered to Subtenant within sixty (60) days after the date on which the Sublease was fully executed and delivered to Subtenant," referencing Section 5(a)(ii) of the Sublease.

32. By response letter to Capital One dated May 22, 2020, Joe Stockton, Zillow's Senior Corporate Counsel, Real Estate, rejected Capital One's purported termination of the Sublease as noncompliant with the terms of the Sublease and demanded Capital One perform pursuant to the Sublease.

33. By reply letter dated June 8, 2020, Mr. Hamblin reiterated Capital One's termination of the Sublease, necessitating this action.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Specific Performance)**

34. Zillow repeats and realleges each and every allegation contained in Paragraphs 1 through 33 as though fully set forth herein.

35. Zillow and Capital One are parties to the Sublease agreement.

36. Zillow performed its obligations under the Sublease.

37. Capital One breached the Sublease by unjustifiably purporting to terminate and anticipatorily repudiating the Sublease in contravention of the Sublease's terms.

38. Zillow and Capital One agreed that "[i]n the event of a breach or a threatened breach" of the Sublease by Capital One that Zillow under the Sublease is entitled to specific performance.

39. Specifically, Section 8 of the Sublease provides Zillow with the "same rights and remedies with respect to a breach of this Sublease by Subtenant as Landlord has with respect to a breach of the Lease, as such provisions are incorporated herein by Section 6" of the Sublease. Pursuant to Section 6, Article 23 of the Original Lease concerning "Remedies and Damages" is incorporated into the Sublease.

40. Section 23.1(C) of the Original Lease, incorporated by reference into the Sublease, provides: "In the event of a breach or threatened breach by Tenant . . . Landlord shall have the right to," among other things, "seek any declaratory, injunctive or other equitable relief, and specifically enforce this Lease," and such remedies are "cumulative and nonexclusive" and do not preclude any other equitable or legal remedies.

41. Thus, Zillow is entitled to specific performance of the Sublease.

42. Zillow therefore demands specific performance of the Sublease.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract)

43. Zillow repeats and realleges each and every allegation contained in Paragraphs 1 through 42 as though fully set forth herein.

44. Zillow and Capital One are parties to the Sublease agreement.

45. Zillow performed all of its obligations under the Sublease.

FILED: NEW YORK COUNTY CLERK 07/21/2020 03:52 PM	INDEX NO. 653262/2020
NYSCEF DOC. NO. 1	RECEIVED NYSCEF: 07/21/2020

46. Capital One breached the Sublease by unjustifiably purporting to terminate and anticipatorily repudiating the Sublease in contravention of the Sublease's terms.

47. Zillow has been damaged by Capital One's breach in an amount to be determined at trial.

48. Section 22 of the Sublease provides that Capital One "shall indemnify Sublandlord . . . from and against all costs, expenses (including reasonable attorneys' fees), . . . suits, claims, . . . and actions to the extent resulting from any breach, violation or nonperformance of any covenant or duty of Subtenant hereunder. . . ."

49. Zillow therefore demands monetary compensation in an amount to be determined at trial, plus interest, costs, disbursements of this action, and attorneys' fees which are recoverable by Zillow from Capital One pursuant to Section 22 of the Sublease.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)

50. Zillow repeats and realleges each and every allegation contained in Paragraphs 1 through 49 as though fully set forth herein.

51. Zillow and Capital One are parties to the Sublease agreement.

52. Zillow performed all of its obligations under the Sublease.

53. Capital One breached the implied covenant of good faith and fair dealing with respect to the Sublease by engaging in wrongful activities designed to harm Zillow's ability to enjoy the benefits of its bargain with Capital One including, among other things, purporting to terminate the Sublease on the basis that NDA rights documentation was not timely provided by Zillow to Capital One.

54. Given the provisions of Sections 5(a)(ii) and 12 of the Sublease and the parties' actions in negotiating the Consent Letter's language weeks *before* the Sublease was finalized,

11

Capital One is well aware that the Consent Letter serves as the documentation of Capital One's rights in the form Capital One agreed to accept.

55. The Consent Letter was delivered to Capital One on January 24, 2020, just 18 days after the Sublease was signed on January 6, 2020, and well within the 45 days Zillow had to timely provide the Landlord's Consent.

56. Under the Sublease, Zillow had 60 days to deliver to Capital One documentation of its NDA rights. At no time did Capital One suggest that it needed any other documentation from Zillow other than the jointly negotiated Consent Letter which itself was designed to provide Capital One with documentation of its rights in the form Capital One agreed to accept as well as to document the Landlord's consent to the Sublease.

57. If Capital One thought otherwise and believed it still required additional rights documentation, then it acted in bad faith in not providing a draft NDA rights agreement or otherwise simply raising the issue of documentation of its NDA rights with Zillow when Zillow had more than adequate time to arrange for such documentation.

58. Zillow has been damaged by Capital One in an amount to be determined at trial.

59. Zillow therefore demands monetary compensation in an amount to be determined at trial, plus interest, costs, disbursements of this action, and attorneys' fees which are recoverable by Zillow from Capital One pursuant to Section 22 of the Sublease.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Declaratory Judgment)**

60. Zillow repeats and realleges each and every allegation contained in Paragraphs 1 through 59 as though fully set forth herein.

61. Zillow and Capital One are parties to the Sublease agreement.

FILED: NEW YORK COUNTY CLERK 07/21/2020 03:52 PM
NYSCEF DOC. NO. 1

INDEX NO. 653262/2020
RECEIVED NYSCEF: 07/21/2020

62. Zillow asserts that the Consent Letter timely delivered to Capital One on January 24, 2020 provided Capital One with documentation of its rights in the form and substance Capital One agreed to accept.

63. Capital One asserts that the Consent Letter delivered to Capital One on January 24, 2020 did not meet Zillow's obligations under Section 5(a)(ii) of the Sublease to timely deliver to Capital One documentation of its NDA rights such that it may justifiably terminate the Sublease.

64. If the Sublease is not terminated, then, at a minimum, Capital One's first Base Rent payment of $350,233.33 is due to be paid to Zillow on August 1, 2020.

65. By reason of the foregoing, an actual and justiciable controversy exists between Zillow and Capital One.

66. Zillow therefore seeks a declaratory judgment that (a) the Consent Letter meets Zillow's obligations under Sections 5(a)(ii) and 12 of the Sublease given Capital One's agreement to accept documentation of its NDA rights in the form and substance of the Consent Letter; (b) Capital One is not justified in terminating, and has not terminated, the Sublease; (c) Capital One remains obligated to Zillow under the Sublease including, but not limited to, beginning to pay rent due under the Sublease as of August 1, 2020; and (d) Zillow is entitled to recover from Capital One costs, disbursements of this action, and attorneys' fees which are recoverable by Zillow from Capital One pursuant to Section 22 of the Sublease.

### AS AND FOR A FIFTH CAUSE OF ACTION
#### (Attorneys' Fees and Costs)

67. Zillow repeats and realleges each and every allegation contained in Paragraphs 1 through 66 as though fully set forth herein.

68. Zillow and Capital One are parties to the Sublease agreement.

13

FILED: NEW YORK COUNTY CLERK 07/21/2020 03:52 PM INDEX NO. 653262/2020
NYSCEF DOC. NO. 1                                                RECEIVED NYSCEF: 07/21/2020

69. Zillow performed all of its obligations under the Sublease.

70. Capital One breached the Sublease by unjustifiably purporting to terminate and anticipatorily repudiating the Sublease in contravention of the Sublease's terms.

71. Section 22 of the Sublease provides that Capital One "shall indemnify Sublandlord . . . from and against all costs, expenses (including reasonable attorneys' fees), . . . suits, claims, . . . and actions to the extent resulting from any breach, violation or nonperformance of any covenant or duty of Subtenant hereunder. . . ."

72. Zillow therefore demands its attorneys' fees incurred in an amount to be determined at trial, plus interest, costs, and disbursements of this action, which are recoverable by Zillow from Capital One pursuant to Section 22 of the Sublease.

**WHEREFORE**, Plaintiff respectfully requests the entry of a judgment:

a) On the first cause of action, for specific performance of the Sublease;

b) On the second cause of action, for monetary compensation in an amount to be determined at trial;

c) On the third cause of action, for monetary compensation in an amount to be determined at trial;

d) On the fourth cause of action, a declaration that (a) the Consent Letter meets Zillow's obligations under Sections 5(a)(ii) and 12 of the Sublease given Capital One's agreement to accept documentation of its NDA rights in the form and substance of the Consent Letter; (b) Capital One is not justified in terminating, and has not terminated, the Sublease; (c) Capital One remains obligated to Zillow under the Sublease including, but not limited to, beginning to pay rent due under the Sublease as of August 1, 2020; and (d) Zillow is entitled to

recover from Capital One costs, disbursements of this action, and attorneys' fees which are recoverable by Zillow from Capital One pursuant to Section 22 of the Sublease;

e) On the fifth cause of action, attorneys' fees incurred in an amount to be determined at trial, plus interest, costs, and disbursements of this action, which are recoverable by Zillow from Capital One pursuant to Section 22 of the Sublease;

f) Interest, costs, disbursements of this action, and attorneys' fees, which are recoverable by Zillow from Capital One pursuant to Section 22 of the Sublease; and

g) Awarding such other and further relief as this Court may deem just and proper.

Dated: New York, New York
July 21, 2020

**BROWN RUDNICK LLP**

/s/ *David J. Molton*
David J. Molton
Thomas J. Regan
D. Cameron Moxley
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: dmolton@brownrudnick.com
Email: tregan@brownrudnick.com
Email: cmoxley@brownrudnick.com

*Counsel for Plaintiff*