UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---

ZILLOW, INC.,

                          Plaintiff,

   -against-

CAPITAL ONE BANK, N.A.,

                       Defendant.

No. 20 Civ. 06624 (CM)

---

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

McMahon, C.J.:

### INTRODUCTION

Plaintiff Zillow, Inc. ("Zillow") subleased certain premises to Defendant Capital One Bank, N.A. ("Capital One") via a sublease agreement (the "Sublease"). Capital One terminated the Sublease, claiming that Zillow failed to deliver an adequate non-disturbance agreement ("NDA"). Zillow claims that it did provide an adequate NDA, making Capital One's termination of the Sublease a breach of contract.

Zillow filed a complaint (the "Complaint") asserting five causes of action against Capital One for its alleged breach: Count I for specific performance, Count II for breach of contract, Count III for breach of the covenant of good faith and fair dealing, Count IV for declaratory judgment, and Count V for attorneys' fees and costs.

The Complaint was initially filed in Supreme Court: New York County on July 21, 2020. Invoking this Court's diversity jurisdiction, Capital One removed the case to this Court on August 19, 2020. (Dkt. No. 1.) Capital One thereafter filed a motion to dismiss Zillow's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 8.)

For the reasons stated below, Capital One's motion to dismiss is DENIED.

## BACKGROUND

For purposes of this motion to dismiss, all facts alleged in the Complaint will be presumed true. Courts may also consider all documents "integral" to a complaint. Documents are "integral" when a complaint "relies heavily upon its terms and effect." *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). All documents discussed below were either attached to, referenced in, or integral to the Complaint.

*Parties*

Plaintiff Zillow is a Washington corporation with its principal place of business in Seattle, Washington. ("Compl." ¶ 9, Dkt. No. 1-1.)

Defendant Capital One is a national banking association with its principal place of business in McLean, Virginia. (*Id.* ¶ 10.)

*Dealings*

Zillow rents approximately 53,200 square feet of the premises at 130 Fifth Avenue, New York, NY (the "Premises") from ROC-Fifth Avenue Associates, LLC (the "Landlord" or "ROC-Fifth"). (Compl. ¶ 13.) The Premises includes the entirety of the sixth through the ninth floors. (*Id.*) Zillow's lease with the Landlord (the "Master Lease") – originally entered into on February 21, 2014 (the "Original Lease") – has been amended four times, most recently on June 6, 2017. (*Id.*) The Original Lease has a ten-year term, which is set to expire in 2024. ("Original Lease" at 1, Ex. 2 to Dkt. No. 9.)

On January 6, 2020, Zillow and Capital One entered into a sublease agreement (the "Sublease") whereby Capital One agreed to sublease the Premises from Zillow. (Compl. ¶ 14.) The Sublease ran from February 21, 2020 to October 30, 2024, absent an earlier termination pursuant to the Sublease. (*Id.* ¶ 15.) Capital One's first rent payment was due on August 1, 2020.

2

(*Id.* ¶ 17.) Although it seems that Capital One never took possession of the Premises, Zillow argues

that Capital One prepared to do so. (*See* "Opp'n Mem." 20, Dkt. No. 17.)

On May 13, 2020 – four months after executing the Sublease and just over two months

before the first rental payment was due – Capital One notified Zillow that it was terminating the

Sublease. It justified termination by claiming that Zillow had not fully satisfied its obligations

under Section 5(a)(ii) of the Sublease, which provides in relevant part:

> [Zillow] shall use commercially reasonable, good faith efforts to obtain from
> Landlord a subordination, recognition and attornment agreement in such form and
> substance as may be reasonably acceptable to Landlord and [Capital One] (an
> "NDA") as soon as reasonably possible following the execution and delivery of this
> sublease. If an NDA is not fully executed and delivered to [Capital One] within
> sixty (60) days after the date on which this Sublease is fully executed and delivered
> to [Capital One], [Capital One] shall have the right to terminate this Sublease by
> giving notice of such termination to [Zillow] prior to [Capital One] receiving such
> fully executed NDA . . . .

("Sublease" 10, Ex. 1 to Dkt. No. 9.) (Compl. ¶ 31.)

Zillow responded on May 22, 2020, demanding performance and notifying Capital One

that its termination violated the Sublease. (*Id.* ¶ 32.) By letter dated June 8, 2020, Capital One

reiterated its intent to terminate the Sublease. Zillow filed this action as a result. (*Id.* ¶ 33.)

Zillow argues that it satisfied all of its obligations under the Sublease – including Section

5(a)(ii). (*Id.* ¶ 23.) Furthermore, Zillow argues that Capital One's termination is a bad faith effort

to back out of deal in response to an economic downturn spurred by the global COVID-19

pandemic. (*Id.* ¶ 7.)

*The Terms of the Sublease*

Section 5(a)(ii) of the Sublease required Zillow to provide Capital One with a non-

disturbance agreement ("NDA") from the primary landlord. The parties disagree about what the

language of the sublease means.

Another pertinent provision of the Sublease is Section 12. This section required Zillow to provide Capital One with a landlord consent agreement (the "Landlord's Consent"). Section 12 states in part:

> This Sublease is subject to the consent of Landlord, which consent shall be evidenced in such form and substance as may be reasonably acceptable to Landlord, [Capital One], and [Zillow] (the "Landlord's Consent"). [Zillow] shall use commercially reasonable, good faith efforts to obtain the Landlord's Consent as soon as reasonably possible following the execution and delivery of this Sublease by [Capital One] and [Zillow]. . . . If the Landlord's Consent is not fully executed and delivered to [Capital One] within forty-five (45) days after the date on which this Sublease is fully executed and delivered, [Capital One] shall have the right to terminate this Sublease by giving notice of such termination to [Zillow] prior to [Capital One] receiving such fully executed Landlord's Consent.

(*Id.* 16.)

The parties agree that both requirements – Landlord consent and Landlord non-disturbance agreement – could be satisfied by the execution of a single document; that is, one document could contain both the assurances required by the "NDA" and the "Landlord's Consent." This is exactly what Zillow did – it obtained from the Landlord the NDA and the Landlord's Consent in a single document ("the Letter.") (*Id.* ¶ 23; *see also* "Consent Letter", Dkt. No. 9 Ex. 3.).

*The Letter*

The parties concurrently negotiated and finalized the terms of the Sublease and the Letter. (Compl. ¶ 24.) Zillow alleges that the Letter was "jointly negotiated with Zillow and the [Landlord], in full satisfaction of Zillow's obligation," under Sections 5(a)(ii) and 12. (Compl. ¶ 8 (emphasis omitted)). Capital One's counsel provided Zillow with detailed edits to a draft of the Letter on December 6, 2019, a full month before executing the Sublease (*id.*), and the executed Letter incorporated Capital One's edits, which were reviewed by Zillow. (*Id.* ¶ 26.) Capital One made "explicit revisions to the language of Paragraph 8 of the Letter which exceeded the scope of a landlord consent." (*Id.* ¶ 28.) Paragraph 8 provides in part:

4

> In the event that the Lease shall be terminated, [Capital One] shall attorn to [ROC Fifth] pursuant to the then executory terms and conditions of the Sublease, except that [ROC Fifth] shall not . . . (3) be bound by any previous modification of the Sublease except to the extent such modification was consented to by [ROC Fifth] in writing or by any previous prepayment of more than one month's fixed rent or any additional rent then due.

(Consent Letter ¶ 8.)

Capital One provided no additional input to the NDA apart from its input for the Letter, and Capital One gave Zillow no indication that it expected any additional documentation. (Compl. ¶ 30.) Zillow claims the parties understood and "treated the [] Letter . . . as encompassing the entirety of the documentation required under the Sublease," satisfying its obligations under both Sections 5(a)(ii) and 12. (*Id.*)

On January 24, 2020, Capital One received the fully executed Letter, signed by the landlord ROC-Fifth, sublandlord Zillow, and subtenant Capital One. (*Id.* ¶ 23; *see also* Consent Letter.) There is no dispute that the Letter was delivered within the time limits of both Sections 5(a)(ii) (60 days) and 12 (45 days).

Capital One gave no indication to Zillow that the Letter was in any way unacceptable until, by letter dated May 13, 2020, Capital One notified Zillow that it "hereby terminates the Sublease effective immediately," claiming that Zillow failed to satisfy the NDA requirement in Section 5(a)(ii). (*Id.* ¶ 31.) Significantly, May 13 was well beyond the 60 day period for delivery of a "reasonably acceptable" NDA – and well into the pandemic and its consequent closure of many commercial establishments as a public health measure.

*This Lawsuit*

On May 22, 2020, Zillow rejected Capital One's termination letter and demanded performance of the Sublease. (Compl. ¶ 32.) Capital One reiterated its intent to terminate by letter dated June 8, 2020. (*Id.* ¶ 33.) Following Capital One's letter, Zillow filed this action seeking

5

Capital One's specific performance of the Sublease. Capital One moved to dismiss the Complaint in its entirety.

## DISCUSSION

### Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While all reasonable inferences should be drawn in favor of the plaintiff, courts are not required to "accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain sufficient factual allegations to nudge a claim "across the line from conceivable to plausible." *Id.* at 547. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 679.

### The Motion to Dismiss is Denied

This dispute revolves around the NDA provision in Section 5(a)(ii) of the Sublease. Capital One moves to dismiss the Complaint, arguing that the Letter did not satisfy the requirements of Section 5(a)(ii); thus, Capital One asserts that it was completely within its contractual rights to terminate the Sublease.

Capital One is wrong.

The parties agree that the January 24, 2020 Letter was delivered within the time limits of both Sections 5(a)(ii) and 12. They also agree that the Letter satisfied the substantive requirements of Section 12 (the Landlord's Consent). They disagree only about whether the Letter also satisfied the substantive requirements of Section 5(a)(ii) (the NDA).

The crux of Capital One's argument is that an NDA like the one required by Section 5(a)(ii) generally includes three provisions: (1) a subordination provision; (2) an attornment provision; and (3) a nondisturbance/recognition provision ("Recognition Provision"). (*"Def.'s Mem."* at 9, Dkt. No. 10.) Capital One claims the Letter only contained two of the three – it had subordination and attornment provisions, but it lacked a Recognition Provision. (*Id.* 9–10.) Because it did not receive an NDA with all three elements, Capital One argues that Zillow did not fulfill its contractual obligations under Section 5(a)(ii) of the Sublease, and therefore termination is still available. (*Id.*)

Zillow responds that it fully complied with the Sublease and timely delivered all documents, including an NDA, "in the form Capital One itself negotiated with the [Landlord]." ("Pl.'s Opp'n Mem." at 1, Dkt. No. 17.) Zillow also argues that the Letter satisfied its requirements under Section 5(a)(ii) which only required it to "use commercially reasonable, good faith efforts to obtain from Landlord a subordination, recognition and attornment agreement *in such form and substance* as may be *reasonably acceptable* to Landlord and [Capital One]. (*Id.* at 1–2 (quoting Sublease Section 5(a)(ii))(emphasis added)).

It cannot be disputed that the Sublease itself does not indicate that the NDA needed to contain any particular terms or types of terms; it simply needed to be acceptable to the parties. Zillow alleges that Capital One negotiated the terms of the Letter and edited a proposed draft, and so had every opportunity to advise Zillow and the Landlord if it wanted any particular term included. Instead, it received the negotiated form of the Letter and made no protest that any necessary term was missing – thereby indicating that the form and substance of the Letter was "reasonably acceptable" to it. (*Id.* at 6).

Zillow also argues that Capital One's termination of the Sublease violates the covenant of good faith and fair dealing inherent in every contract, because it negotiated and accepted the Letter,

only to wait several months – until the pandemic had taken hold and commercial real estate was becoming a commodity of dubious value -- before notifying Zillow of its intent to terminate. (*Id.* at 17.)

Capital One argues that its right to terminate the sublease is "unambiguous." But if the allegations of the Complaint prove true, the only thing that would be "unambiguous" is that Capital One – having had an opportunity to indicate what terms were acceptable to it in an NDA, and having accepted the Letter containing those terms – had no right whatsoever to terminate the Sublease. Since I am assuming that the allegations of fact in the complaint are true, Capital One is not entitled to dismissal of the Complaint.

This court rejects any suggestion that the terms of the Sublease are ambiguous or capable of more than one interpretation. Section 5(a)(ii) is perfectly clear and utterly unambiguous; it can and will be interpreted as a matter of law. Its express terms contain no requirement that the NDA contain any particular terms or that it conform to any commercial expectations. Therefore, Capital One's contention that a particular term that is "generally" found in an NDA is missing from this one does not make the slightest bit of difference to whether the Letter complies with the terms of the Sublease, and no testimony about commercial expectations would be admissible to vary those express and completely unambiguous terms. The contract requires only that the NDA contain "substance" that is "reasonably acceptable" to the parties. What is "reasonably acceptable" to parties is a question of fact, and the facts are evidenced by the parties' actions.

Zillow has alleged facts supporting its claim that Letter provided Capital One was "reasonably acceptable" to Capital One. If Capital One, following negotiations that are memorialized in draft documents, accepted without protest the timely tendered Letter that did not contain a Recognition Provision, and then did not call any purported deficiencies in the Letter to

Zillow's attention until the sixty day period for providing an NDA had expired, it will be difficult indeed for a factfinder to conclude that the Letter that was tendered was not "reasonably acceptable" to Capital One. If Zillow's account turns out to be undisputed, it is even possible that this case can be disposed of on a motion for summary judgment, since if the facts alleged concerning the negotiation and drafting of the Letter are true, Capital One cannot fall back on some undisclosed intent that the NDA contain some absent term in order to prevail in this lawsuit.

In short, the Complaint alleges facts that, if true, establish that Zillow lived up to its obligations under the Sublease in every particular. This would render Capital One's termination a breach of contract and entitle Zillow to specific performance – or, in the alternative, to damages in the form of the rent it would have received pursuant to the Sublease. Additionally, if the Sublease was wrongfully terminated, Zillow is entitled to recover the cost of this lawsuit from Capital One pursuant to Section 22 of the Sublease, which requires Capital One to "indemnify [Zillow] . . . from and against all costs, expenses (including reasonable attorneys' fees), . . . suits, claims, . . . and actions to the extent resulting from any breach, violation or nonperformance of any covenant or duty of [Capital One] hereunder. . . ."

The motion to dismiss is denied as to all counts in the Complaint. We will decide at a later point whether Count III, for breach of the covenant of good faith and fair dealing that is implied in every New York contract, see *Tractebel Energy Mktg. v. AEP Power Mktg.*, 487 F.3d 89, 98 (2d Cir. 2007) (citing *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995)) is duplicative of the other counts.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is DENIED.

The Clerk of the Court is directed to remove the motion at Dkt. No. 8 from the Court's list of pending motions.

Dated: February 5, 2020
       New York, New York

Chief Judge

BY ECF TO ALL PARTIES

10